IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| | |
|---|---|
| THOMAS M. HOGAN, <br><br> Plaintiff, <br><br> vs. <br><br> BEEFTEK, INC., <br><br> Defendant. | CV 15-27-BLG-SPW <br><br> OPINION and ORDER |

This matter comes before the Court on defendant BeefTek, Inc.'s Motion to Compel Arbitration and Dismiss Plaintiff's Complaint for Declaratory Judgment. (Doc. 5). Having read and considered the briefing, the parties are ordered to show cause why this matter should not be transferred to the United States District Court for the Northern District of Texas.

I. **Factual and Procedural Background**

BeefTek is a company that identifies, acquires, and manages commercial feeder cattle for growth and sale. (Doc. 5-1 at 1). In June 2010, Thomas Hogan and BeefTek entered into an Employment Agreement ("Agreement") under which Hogan served as the Chief Operating Officer of BeefTek. (*Id.* at 2); (Doc. 1-1). The Agreement provides that "any controversy . . . or dispute . . . relating to this agreement . . . or relating to the employment of the executive, or to the termination

1

thereof . . . shall be resolved by arbitration in the state of Texas in accordance with the employment dispute resolution rules of JAMS/ENDISPUTE. . . ." (Doc. 1-1 at 9). The parties dispute when Hogan's employment ended with BeefTek. (Doc. 5 at 8; doc. 8 at 2).

Hogan filed his Complaint (doc. 1) requesting this Court declare the Agreement expired and Hogan's duties under the Agreement extinguished as of June 25, 2010, or in the alternative, that the Non-Competition and Non-Solicitation provisions in the Agreement are void and unenforceable. (*Id.* at 6-7). BeefTek argues that the Court should dismiss Hogan's action and compel arbitration. (Doc. 6).

## II. Legal Standard

The Federal Arbitration Act ("FAA") provides that arbitration agreements governed by the FAA "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The statute reflects a "liberal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

The FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court ... for an order directing that ... arbitration proceed in

the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The role of a district court in determining whether to compel arbitration is limited. The FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks, emphasis, and brackets omitted). If the parties are bound and the arbitration clause is implicated, the court must direct the parties to arbitration. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

Arbitration is, however, "a matter of contract and a party cannot be required to submit any dispute which he has not agreed to submit." *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, (1986); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2004). So, courts may only compel parties to arbitrate disputes that fall within the scope of their agreed-upon arbitration clause. That said, the presence of an arbitration clause gives rise to a strong "presumption of arbitrability." *Id.* Thus, a motion to compel arbitration of a "particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf*, 363 U.S. at 582–583; *see also AT &*

*T Techs., Inc.*, 475 U.S. at 650. Any "[d]oubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U.S. at 583.

Before considering the merits of a defense raised to avoid arbitration, the court must determine whether the issue is one for the court or an arbitrator to resolve. Specifically, where a dispute exists over whether a contract with an arbitration clause has expired or been terminated, the proper initial inquiry for the court is whether the arbitration clause covers such disputes, not whether the termination clause means what the defendant or the plaintiff says it means. *Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.*, 832 F.2d 507, 511 (9th Cir.1987). If the arbitration clause is broad, the question whether a particular act or failure to act effectively serves to terminate the agreement should be resolved by an arbitrator. *Id.*

In *Brotherhood of Teamsters*, the Union and Interstate entered into a collective bargaining agreement ("CBA"). The CBA contained a broad arbitration clause which provided that "[a]ny grievance or controversy affecting the mutual relations of the Employer and the Union was to be resolved by an arbitrator" and "shall be binding." *Id.* at 508. The CBA also contained a termination clause that stated the agreement "shall remain in force and effect [until] the thirty-first of March, 1985, and shall automatically be renewed thereafter from year to year unless [either] party [gives] written notice of its desire to change or modify the

4

Agreement." *Id.* On January 23, 1985, Interstate wrote the union stating it desired to "change or modify the agreement between the parties." The union responded a week later that it was willing to "open" the Agreement. *Id.* Nothing occurred until the parties accused each other of breaching the agreement in June. *Id.* at 509. Interstate refused to arbitrate because it believed the contract had been terminated three months earlier along with the obligation to arbitrate. The union brought suit to compel arbitration. *Id.*

Reversing the district court, the Ninth Circuit held that the question of whether the agreement – and thus the arbitration provision – is in effect at a particular time may be answered in two ways. *Id.* at 510. If the parties dispute whether they ever entered into any arbitration agreement at all, the court must resolve the dispute. *Id.* On the other hand, where the parties agree they entered into an agreement containing an arbitration clause but disagree about whether the contract has expired or been terminated, the question is for the arbitrator. *Id.*

Specifically, the Court explained, "[t]he reason that arbitrators rather than courts generally decide whether [agreements] containing broad arbitration clauses have expired or been terminated is readily apparent. The issue involves the interpretation of the expiration or termination provision of the agreement, and standard arbitration clauses ordinarily provide that such interpretations, like all others necessary to the resolution of disputes over the meaning of the contract,

5

shall be made by an arbitrator." *Id.* In other words, the issue is "an ordinary dispute over the meaning of a contract clause – the expiration or termination provision." *Id.* at 511.

Usually, labor arbitration clauses are broad enough to cover disputes over termination. *Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1338 (9th Cir. 1990) (citing *Brotherhood of Teamsters*, 832 F.2d at 511; *George Day Constr. Co., Inc. v. United Bhd. of Carpenters & Joiners, Local* 354, 722 F.2d 1471 (9th Cir.1984)). An agreement to arbitrate "any grievance or controversy affecting the mutual relations of the [parties]," an agreement to arbitrate "any differences that may arise regarding the meaning and enforcement of this Agreement," or any other broad arbitration clause, such as "any dispute arising out of this Agreement," ordinarily requires us to hold that the parties have provided for arbitration of disputes regarding termination and repudiation[.]" *Id.* (internal citations omitted).

### III. Discussion

#### A. Whether the Parties' Agreement Expired is a Question of Contract Interpretation for the Arbitrator to Decide

Hogan argues that because he is asking the Court to declare that the Agreement is expired, the arbitration provision contained in the Agreement is irrelevant and invalid and he is not required to submit to arbitration. (Doc. 8 at 4). Hogan's argument is exactly the same argument that was asserted by Interstate and

6

rejected in *Brotherhood of Teamsters*. There, the Court held that when the parties' only dispute is over whether the contract has expired or terminated, and the arbitration clause broadly covers "any grievance or controversy," the dispute must be submitted to arbitration. *Id.* at 510-11.

It is undisputed that Hogan entered into the Agreement (which contained the arbitration provision) with BeefTek. (Doc. 1-1). Hogan has not suggested that any grounds exist to revoke the Agreement and he has not contested the scope of the arbitration provision contained therein. Rather, he argues that since "[t]he question [for the Court] is whether the []Agreement expired," the language of the Agreement (including the arbitration provision) matters not. (*Id.*). He's wrong.

Because the arbitration clause in this case broadly states that "any controversy, claim or dispute arising out of or relating to [the] agreement . . . or relating to the employment of the executive, or the termination thereof . . . shall be resolved by arbitration," (doc. 1-1 at 9), the question of when and whether the Agreement was terminated, which may or may not have been triggered by Hogan's termination, is encompassed by the Agreement's arbitration provision. And because the parties agreed to a broad arbitration clause that included Hogan's termination and the Agreement's termination, the Court will presume that the parties intended disputes over Hogan's termination or expiration of the contract should be submitted to arbitration. *Id.* at 511.

7

Hogan's argument that the presumption favoring arbitrability is negated because his Complaint arose after the Agreement terminated suffers from several fatal flaws. First, Hogan's argument begs the question. The parties' fundamental dispute is about when the Agreement terminated. For Hogan's argument to have merit, he presupposes the answer. That is, he predicates his argument on the assumption that he is correct that the Agreement expired on June 25, 2013 – a fact that has not yet been found by either a court or an arbitrator. Second, once it has arisen, "the presumption in favor of arbitrating disputes over contract duration can only be overcome by a clear showing that the parties intended for the underlying contract to expire, or separately agreed to terminate it, before the relevant dispute arose." *Nat'l R.R. Passenger Corp. v. Bos. & Me. Corp.*, 850 F.2d 756, 763 (D. C. Cir. 1988). This presumption may be overcome "either (1) by demonstrating that the original contract contains an unambiguous expiration date; or (2) by making a clear showing that the contract was properly terminated before this dispute arose." *Id.* Hogan fails to make either showing.

Hogan has not pointed to an unambiguous expiration date. The Agreement's duration provision states that the parties' agreement shall "continue thereafter until terminated by either party pursuant to the terms of this Agreement." (Doc. 1-1 at 3). It also states that the agreement shall "continue until terminated upon the earlier to occur of the following events: (i) the close of business on the third

8

anniversary of this Agreement . . . or (ii) the Executive becomes permanently disabled [ ] or dies . . . or at any time for any reason by giving the Company written notice at least ninety (90) days prior to the effective date of termination. . . ." (*Id.*). The expiration dates rely upon various activities that may or may not occur, so they are not unambiguous. In fact, ambiguity about the critical dates is at the heart of the dispute set out in Hogan's Complaint. Hogan thus has not shown that "the original contract contains an unambiguous expiration date." *Id.* at 763.

Hogan has also failed to make "a clear showing that the contract was properly terminated before" his grievance arose. *Id.* There is no question the contract was in place on June 25, 2010, when Hogan signed it. (*See gen.* Doc.1-1). Under Section 5(a), the Agreement commenced on June 25, 2010, and continued thereafter until terminated by either party pursuant to the terms of the Agreement. So, Hogan's employment continued indefinitely until either party terminated it. But under Section 5(b), the Employment Period terminated after three years from the date of the Agreement, or disability, or death. (*Id.* at 3). So, under that provision, Hogan's Employment Period ended June 25, 2013. (*Id.* at 3; *see also* Doc. 1). Based on those contradictory provisions, it is plausible that the parties' contract was in effect and Hogan was still employed after June 25, 2013, despite 5(b)'s three year limitation. BeefTek's letter confirming Hogan's March 14, 2014, termination certainly seems to indicate that Hogan had been employed from June

9

10, 2013 to March 14, 2014, notwithstanding provision 5(b). (Doc. 1-3). Further, Hogan apparently refutes BeefTek's assertion that he quit his employment with BeefTek in his April 2015 email where he states he is not quitting. (Doc. 5-1A) ("You were also misinformed as to my resigning from [ ] employment with BeefTek. ... I am not going to quit BeefTek and abandon my many hours of work[.]") That email also seems to indicate that he remained employed past June 2013, despite 5(b). Without deciding any facts, it is far from clear that the parties' contract terminated before Hogan's grievance arose. Consequently, Hogan fails to rebut the presumption that the parties' dispute should be referred to arbitration.

Finally, Hogan asserts that the arbitration provision is unconscionable and lacks mutuality. (Doc. 8 at 7-8). There are simply no facts supporting that argument. The arbitration agreement does not lack mutuality; it reserves to both parties a limited right to seek injunctive relief from the court and mutually obligates both parties to arbitrate claims. (*See* Doc. 1-1 at 9-10). Similarly, there is no evidence before the Court that the arbitration provision is unconscionable, procedurally or otherwise. Arbitration is appropriate.

### B. This Court Cannot Order Arbitration in Texas.

Finally, Hogan asserts this Court does not have jurisdiction to order the parties to arbitrate the dispute in Texas. (Doc. 8 at 9). There is no dispute that the arbitration agreement provides that arbitration occur in Texas, and the purpose of

the FAA is to enforce arbitration agreements according to their terms. *Stolt–Nielsen S.A. v. AnimalFeeds Intl Corp.*, 559 U.S. 662, 665 (2010). However, the court agrees with Hogan that at least in this Circuit, the court is precluded from ordering the parties to arbitrate outside of this judicial district.

The FAA imposes certain fundamental rules on arbitration procedures. *Id.* With regard to the location of a compelled arbitration, the language of 9 U.S.C. § 4 of the FAA is clear. On proper motion, the court is authorized to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be *within the district in which the petition for an order directing such arbitration is filed.*" 9 U.S.C. § 4 (emphasis added). The Ninth Circuit has interpreted Section 4 of the FAA as limiting courts to ordering arbitration within the district in which the suit was filed. *Continental Grain Co. v. Dant & Russell*, 118 F.2d 967, 968 (9th Cir. 1941).

BeefTek points to *Dupuy-Busching General Agency, Inc. v. Ambassador Insurance Co.*, 524 F.2d 1275 (5th Cir. 1975), for the proposition that this Court has the authority to compel arbitration in a district outside its own when the party seeking to avoid arbitration files suit in a district other than that provided for in the arbitration agreement. Fifth Circuit law is not Ninth Circuit law, however.

11

In *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 784-85 (9th Cir. 2000), the Ninth Circuit stated that "by its terms, § 4 confines the arbitration to the district in which the petition to compel is filed." *See also Bauhinia Corp. v. China Nat. Mach. & Equip. Imp. & Exp. Corp.*, 819 F.2d 247, 250 (9th Cir.1987) (prohibiting district court from ordering parties to arbitrate outside of district when arbitration agreement was silent as to venue). District courts have struggled with the issue but come to the same conclusion. *See Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131, 1144 (N.D. Cal. 2003) (expressing concern that a party to an arbitration agreement may avoid its contractual obligation to arbitrate in an agreed-upon forum merely by filing suit in a different district, but holding that "[a]bsent new guidance from the Ninth Circuit . . . the court is precluded from ordering arbitration in the contractually designated forum."); *see also Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1092 (D. Haw. 2011) (where arbitration agreement specified venue outside district where petition was filed, court acknowledged that it could order arbitration only within its own district, so transferred case instead). Accordingly, § 4 and *Continental Grain* preclude this Court from ordering the arbitration take place in Texas.

## C. Transfer to Texas is Appropriate

In this court's view, entering an order compelling the parties to arbitrate in Montana would be contrary to the FAA because such an order would contradict the terms of a valid arbitration agreement. The Supreme Court has "said on numerous occasions that the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt–Nielsen S.A.*, 559 U.S. 662, 682. "[P]assage of the Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." *Dean Witter Reynolds, Inc.* 470 U.S. at 220. If the court determines that a valid arbitration agreement encompasses the parties' dispute, the court must enforce the arbitration agreement according to its terms. *Id.* Indeed, § 4 confers upon parties the right to obtain arbitration on the terms provided for in the parties' agreement.

The parties' Agreement unequivocally states that arbitration shall occur in Texas in accordance with the employment dispute resolution rules of JAMS. (Doc. 1-1 at 9). JAMS is located in Dallas, Texas. (Doc. 6-1). This forum selection demonstrates to this Court that Texas, not Montana, is the proper forum for arbitration. Dallas, Texas is located in the Northern District of Texas. The Northern District of Texas, therefore, would have the power to grant or deny BeefTek's motion to compel arbitration in accordance with the parties' agreement.

13

## IV. Conclusion

For the foregoing reasons, the Court orders the parties, to SHOW CAUSE, if any, in writing, on or before August 15, 2015, why this case should not be transferred to the United States District Court for the Northern District of Texas.

DATED this 20th day of July, 2015.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge